FRANCIS LE BRETON & another *vs.* HENRY A. PEIRCE.

If the owners of property have intrusted it to an agent for a special purpose, and the agent, in violation of his duty, has unlawfully consigned the same to be sold, with directions to remit the proceeds to a private creditor of his own, and such creditor, upon being informed by a letter from the consignee of the consignment of the property and directions in reference to the same, manifests his assent thereto by unequivocal acts, and the property is sold by the consignee, and bills of exchange payable to the agent's creditor or his order are purchased with the proceeds, and remitted in a letter addressed to him, in compliance with the directions, and the creditor, after receiving notice of the intended remittance, and after manifesting his assent thereto, and after the remittance is actually made, but before it is received, learns for the first time of the manner in which the agent became possessed of the property, and of his wrongful acts in reference to it, the original owners of the property cannot maintain an action for money had and received against such creditor, to recover the amount collected by him upon the bills of exchange.

CONTRACT for money had and received. At the trial in this court, the following facts were agreed:

In August 1858 the defendant sold to John H. Delee the bark

Messenger Bird for $16,000, receiving one half in cash, and Delee's note for $8000, payable in six months with interest, secured by a mortgage of the vessel.   The defendant at the same time took as further security policies of insurance on the vessel to the amount of $16,000, payable to him in case of loss for a voyage stated by Delee to be contemplated by him, at and from a port of lading north of Cape Hatteras to Rio Janeiro and back to a port of discharge north of Cape Hatteras.

On the 2d of May 1859 the defendant received from Cross & Co., merchants of Valparaiso, a letter dated March 31, 1859, advising him that the vessel had put into Valparaiso on her voyage to San Francisco, and discharged a portion of her cargo, 601 bags of coffee, which had been consigned to them by Delee, with directions to sell the same and remit the proceeds to the defendant, after deducting their advances to him of $4292. Upon receiving this letter the defendant at once, upon the same day, cancelled his former policies and made an oral agreement for a reduced insurance for a voyage of the vessel at and from Valparaiso to San Francisco; which agreement was afterwards discharged by the parties, upon the development of the facts hereafter stated.

On the 5th of May 1859 the defendant, who until then was wholly ignorant of the proceedings of Delee, and of the fact that he was not the owner of the coffee consigned by him to Cross & Co., saw in the Boston Daily Advertiser an article as follows:—" Bark Messenger Bird, of Kingston, Mass., John H. Delio master, which sailed from Rio de Janeiro on the 19th of January last, with a cargo of 4824 bags of coffee, for Hampton Roads, for orders, consigned to Mr. John Gallop, of New York, arrived at Valparaiso on the 27th of March, ostensibly bound to California.   The cargo, worth $90,000, is insured in England.   She had been supposed to be lost, and the strange conduct of the captain in taking her to Valparaiso is yet to be explained."   On the same day the defendant wrote to Gallop, inquiring as to the truth of the facts stated in the article, and stating his own position as to security, and the notice received by him from Cross & Co.   Gallop, in reply, on the next

day, gave the information sought, and notified the defendant that the remittance would be claimed, when received, as the proceeds of the property of the plaintiffs which had been barratrously seized and appropriated by Delee.

By letter dated Valparaiso, April 30, 1859, Cross & Co. remitted to the defendant, in bills of exchange payable to him or his order, $5084.34, being the net proceeds of the sales of the 601 bags of coffee above referred to, after deducting their advances. This letter was received June 14, 1859, and Gallop was informed thereof; and he, acting as agent of the plaintiffs and in their behalf, requested payment of the bills of exchange, with which request the defendant declined to comply. The bills were paid to the defendant before this action was brought.

In January 1859 the plaintiffs, merchants of Rio Janeiro, owned and shipped on board of the Messenger Bird, owned and commanded by Delee, 4824 bags of coffee, to be carried to Hampton Roads, and thence to New York, Philadelphia or Baltimore, according to orders to be received from Gallop, to whom the same were consigned, as agent of the plaintiffs, for sale on their account. The vessel sailed ostensibly on this voyage; but, instead of pursuing the same, Delee barratrously took her round Cape Horn, and put into Valparaiso in the latter part of March, where he landed the 601 bags of coffee, assumed ownership of the same, and fraudulently consigned them to Cross & Co. for sale, and obtained an advance thereon of $4292, and sailed with the vessel and the residue of the cargo apparently for San Francisco; and the vessel and the residue of the cargo have since been lost, or are in possession of Delee, or have been fraudulently disposed of by him. No communication has been received by the defendant from Delee since the vessel sailed from the United States, nor has he received any payment for his debt, except as above stated.

*F. C. Loring*, for the plaintiffs, cited *Moses* v. *Macferlan*, 2 Burr. 1008; *Taylor* v. *Plumer*, 3 M. & S. 562; *Hudson* v. *Robinson*, 4 M. & S. 478; *Neat* v. *Harding*, 4 Eng. Law & Eq. R. 494; *Mason* v. *Waite*, 17 Mass. 560; *Hall* v. *Marston*, Ib. 579; *Gilmore* v. *Wilbur*, 12 Pick. 124; 2 Story on Eq. §§ 1255, 1256,

1258; *Oliver* v. *Piatt*, 3 How. (U. S.) 401; *Wilson* v. *General Ins. Co.*, 12 Cush. 360.

S. *Bartlett & D. Thaxter*, for the defendant, cited *Lime Rock Bank* v. *Plimpton*, 17 Pick. 159; *Smith* v. *Hodson*, 4 T. R. 211; S. C. 2 Smith's Lead. Cas. 81, 89; Story on Agency, § 229; *Blanchard* v. *Stevens*, 3 Cush 162; *Swift* v. *Tyson*, 16 Pet. 1; *Miller* v. *Race*, 1 Burr. 452; *Clarke* v. *Shee*, Cowp. 197; *Calland* v. *Loyd*, 6 M. & W. 26; *Mason* v. *Waite*, 17 Mass. 560; *Atlantic Bank* v. *Merchants' Bank*, 10 Gray,     ; 2 Kent Com. (6th ed.) 623; Story on Notes, § 195, *note; Peters* v. *Ballistier*, 3 Pick. 505; *Hunter* v. *Prinsep*, 10 East, 378.

MERRICK, J.   The sale of the coffee by Cross & Co., by the directions of Delee, under the circumstances mentioned in the statement of facts, did not divest the plaintiffs of their right of property therein.   If found within their reach, they would still have been entitled to reclaim and take possession of it as their own.   They might also, if they had elected to do so, have waived the tort, and maintained an action against the vendors for the money for which it was sold.   But this would have been an affirmation of the contract of sale, which they would have been obliged to pursue through all its consequences.   They could not recover against the wrongdoers the actual value of the property, as they might have done in an action of trover or trespass, but would be limited to the amount for which it was sold.   Treating him merely as their debtor, responsible to them in that relation for a definite sum, without regard to the identity of the money which he had received upon conversion of the property, they would recover judgment against him for the same amount, and the proceeds of the sale would thereby be left in his hands as his own.   *Jones* v. *Hoar*, 5 Pick. 285.   *Smith* v. *Hodson*, 4 T. R. 211, and note to same case in 2 Smith's Lead. Cas. 81.

But the plaintiffs, not now seeking to avail themselves of their right to waive the tort and affirm the contract of sale, attempt to maintain their action upon a different though somewhat similar principle of law.   They claim that the coffee was intrusted by them to Delee, at Rio Janeiro, for the specific

purpose of being carried in the bark Messenger Bird to Hampton Roads, and thence to New York, Philadelphia or Baltimore, according to the directions of John Gallop, to whom it was consigned; that Delee barratrously departed from the proposed voyage, and, having arrived at Valparaiso, there, in violation of his contract and of his duty, consigned the coffee to Cross & Co. with instructions to make sale of the same, and, after deducting their advances, to remit the balance of the proceeds to the defendant; and that the money received by the defendant upon the bills of exchange remitted to him in pursuance of those instructions is a mere substitute for the coffee, and only a new form into which it had been converted by an unlawful sale.

It is clear that the abuse of a trust can confer no right either on the party guilty of such misconduct or on those who claim in privity with him. Property covered by a trust may always be reclaimed, wherever it may be found; and no change of its form, state or condition can relieve it from, or divest it of, the trust, or give to the agent or trustee by whom it is converted, or those who represent him in right, whether as executors, administrators, assigns or purchasers, with notice and without consideration, any more valid claim in respect to it than they severally had before the change took place. It is of no consequence into what form different from the original the change may have wrought it — whether it be that of goods, chattels, notes, stock or coin; for the product, as a substitute for the original thing, still follows the nature of the thing itself, so long as it can be ascertained to be such. These are the terms in which the law is laid down by Lord Ellenborough, as affirmed by the court in the carefully considered case of *Taylor* v. *Plumer*, 3 M. & S. 562. And Judge Story, who borrows his language, after declaring that the principle has a universality of application in equity, adds that it is fully recognized at law in all cases where it is susceptible of being brought out as a ground of action or defence in a suit at law. 2 Story on Eq. § 1258.

But the right of parties to avail themselves of the benefit of this principle is subject to two qualifications, the one arising from necessity, and the other from general considerations of

Le Breton & another *v.* Peirce.

equity and justice.  In the first place, the right of pursuing the original property through all successive modifications and changes unavoidably fails when the means of establishing the identity of that which is claimed with that which was covered with the trust cannot be produced, or do not in fact exist.  This will occur when the subject matter is first turned into money, and that is afterwards mixed and confounded in a general mass of property of the same description.  This is only an instance in illustration of the rule which must of necessity be applied in every case where it has become impossible to establish the fact of the alleged identity.  The second qualification of the same principle arises, and precludes the owner of the property covered by the trust from the further pursuit of it, when, having been tortiously converted into a new form — as, for example, merchandise into promissory notes, or money into public stocks — it has in the latter form and condition been sold and transferred to a purchaser for a valuable consideration and without notice of any existing equities.  In either of these contingencies, the owner of property misapplied can only obtain redress by finding and repossessing himself of the specific thing of which he has been deprived, or by a personal action against those who unjustly or unlawfully have converted it to their own use.  It is certainly reasonable that losses resulting from the unfaithfulness of an agent should be borne by the principal whose misplaced confidence has afforded the means of producing it, rather than by strangers acting fairly in the ordinary course of business.  2 Story on Eq., *ubi supra.*

If therefore Cross & Co., upon a sale of the coffee consigned to them by Delee, had received payment for it in money, and had mixed and united that with their other moneys, and had afterwards, out of their general and common fund, purchased and remitted bills of exchange for a corresponding amount, according to the directions of the consignor, which we suppose is the usual manner in which commission merchants conduct their affairs, the identity of the original property with the money paid by the acceptor of the bills of exchange, on presentment when due, could not have been established, and no action for the

amount thus received could have been maintained by the plain-
tiffs against the holder. But in this case the parties have agreed
that the bills of exchange sent to the defendant were purchased
with the proceeds of the coffee consigned by Delee; that is, as
we must understand their agreement, with the very moneys
which Cross & Co. received in payment upon its sale ; just as
in the case of *Taylor* v. *Plumer,* above cited, the American
stocks, which were the subject in controversy, were paid for in
the same bills which the broker received under special directions
to apply them to the purchase of bills of exchequer. The iden-
tity therefore of the money received by the defendant with the
coffee belonging to the plaintiffs, and unlawfully disposed of
through the tortious and barratrous conduct of Delee, is by the
admission and agreement of the defendant fully established ;
and he can consequently make an effectual defence to the pres-
ent action only by showing that he was a purchaser of the bills
of exchange for a valuable consideration, and without notice
of the fraud practised upon the plaintiffs, or of any existing
equity in their favor.

The taking of a promissory note, bill of exchange or other
property, in payment and satisfaction of a preëxisting debt, or
as collateral security for its payment, constitutes a purchaser for
valuable consideration. This has been definitively determined
to be the law of this commonwealth. In the case of *Blanchard*
v. *Stevens,* 3 Cush. 162, it appeared, from the facts stated in the
report, that P. and B. S. Hale, the makers of the note declared
on, procured it to be indorsed by Stevens, and then, being in-
debted to the plaintiff, transferred it to him as security for the
payment of their debt. Stevens contended, and offered evidence
to prove, that his indorsement of the note was merely for the
accommodation of the makers, and was made upon their repre-
sentations that the note was to be used for the purpose of raising
money to pay for wheat to be purchased by them in the western
states The court said that the real question presented for their
consideration was, whether the plaintiff, having received the note
either in payment of, or as collateral security for, a precedent
debt, must take it subject to all existing equities between the

original parties; and it was held, upon a full review by *Dewey*, J. of all the authorities bearing upon the question, that the defendant could not avail himself of such equity, it being unknown to the plaintiffs when they took the note, but that they were entitled to recover and hold its contents as absolute owners.

It is here agreed by the parties that, at the time of the several transactions out of which the controversy between them arises, Delee was indebted to the defendant in the sum of $8000, being the balance due from him upon the purchase of the bark Messenger Bird; and that no part of that balance has ever been paid, otherwise than as it is affected by the remittance by Cross & Co. of the bills of exchange to the defendant, and his receipt of the money due thereon; and that until the 5th of May 1859 he had no knowledge whatever of the tortious or barratrous acts of Delee in disposing of the coffee belonging to the plaintiffs. His suspicions were for the first time excited by an article which he saw in the Boston Daily Advertiser of that date; and on the day following, upon his own application therefor, he obtained full information from Mr. Gallop, the plaintiffs' agent, who at the same time gave notice that the money when collected on the bills would be claimed as the proceeds of their coffee. If therefore the bills had before the 5th of May been transferred to the defendant by his agent, so that the title thereto vested in him, to be held either in payment, or as collateral security for the payment, of the debt due to him from Delee, he is entitled to the money which he subsequently received upon them, and this action cannot be maintained. And of this, upon the facts agreed, we think there can be no reasonable doubt.

When Cross & Co. remitted the bills to the defendant, they certainly intended to make them his property, and did everything in their power to give that effect to the transaction. The remittance was in pursuance of the express directions of their consignor, and was in discharge of their obligations and in payment of their debt to him; they believing him to have been the true owner of the coffee consigned to them. The bills were made payable to the order of the defendant, and forwarded in a letter addressed directly to him. They were therefore contracts in his

name, and in their terms expressly with him; and he only in his own name could maintain a suit upon or enforce the payment of them. As soon as the letter containing them was despatched, the defendant was the only person who could lawfully demand and receive it from the public carriers, on its arrival at the place of the defendant's residence, to which it was directed. There was no right of stoppage *in transitu,* as in the case of merchandise; and therefore Cross & Co. ceased to have any control over either the letter or its inclosures, while the defendant was entitled to come into the immediate possession of both. The remittance was made from Valparaiso on the 30th of April 1859. On the 2d day of May following, the defendant received advices of the intended remittance.

It is contended in his behalf that, the remittance being for his benefit, it is to be presumed as matter of law that he assented to receive and accept it for the purpose for which it was sent. Undoubtedly under the circumstances in which he was placed he would be very likely to do so. Delee owed him a large sum of money, for which the bark, then in a distant sea, and the policies of insurance upon it, afforded him only an imperfect and uncertain security. He would therefore naturally avail himself without hesitation of any direct offer of payment of his debt, or of any considerable part of it. But without placing too much stress upon this consideration, or assuming that the law affords the presumption upon which he insists, we think that his assent to take the bills of exchange, which at the very time of his action were in course of transmission, is an inevitable implication from his acts and conduct in relation to them. Immediately upon receiving from Cross & Co., on the 2d of May, intelligence of the intended remittance, and before the article in the Daily Advertiser above referred to had been published, he cancelled his former insurance; and thereupon made a verbal agreement for a "reduced insurance" on the bark for a voyage "at and from Valparaiso to San Francisco." This provision for a "reduced insurance" is very significant, and seems conclusively to show his real purpose, design and action in reference to the bills of exchange. It shows that he then understood that, by means of

them, he had acquired new rights, and that he assented to their transfer to him and adopted them, either as an additional and acceptable security for the debt due from Delee, or as an actual payment, *pro tanto*, of it. For in whatever light it is considered, or whichever of these two purposes he may be supposed to have had in view, it is apparent that he acted upon the assumption that, in consequence of taking the bills to himself, he had no longer occasion for insurance to the larger amount expressed in the original policies, because the amount of his debt was reduced, or otherwise satisfactorily protected. This manifests his intent as clearly as if he had declared it in the most direct and explicit terms. When therefore it is found that the bills of exchange are contracts made in his name and for his benefit, that upon their transmission they ceased to be subject to the control of any other party, that as soon as he was advised that they were to be forwarded he assented to receive them for the purpose for which they were remitted, and that he ever afterwards claimed to hold them and their proceeds as his own, in payment of the debt due to him from Delee, he can be considered in no other light than as a purchaser for a valuable consideration. And as the transfer was thus perfected and the property became vested in him before he received notice of the right or claim of the plaintiffs, the defendant is entitled to hold them divested of all existing equities in favor of other parties.

It has been urged for the plaintiffs that the condition of the defendant was in no respect changed, either by the cancelling of the original policy or by his acceptance of the bills of exchange in payment of the debt of Delee, because the policies had been already vacated by the deviation of the bark on the voyage insured, or else were cancelled under a mistake of fact, and therefore were in that way invalidated; and because, upon the recovery by the plaintiffs in this action, the debt against Delee will revive. But it is after all a mere assumption of the fact to assert that these circumstances effected no change in the defendant's condition. As to the policies, before he could recover upon them for any loss which may have occurred, he would certainly now have to prove the alleged mistake of fact, a burden

2 *

which, if no cancellation had taken place, would not have rested upon him ; and it is not proved, nor is it indeed now susceptible of proof, that he could and would have done nothing in reference to his debt, if, upon obtaining information that the bark upon which he held a mortgage had been carried to Valparaiso, he had not assented to take the offered remittance. No one can affirm that he would not have attempted to obtain security from other sources, if he had not placed reliance upon that ; and his forbearance from all effort to protect his interest was in itself a change from the condition in which he then stood, and to which, being passed, he can of course never be restored.

The court being upon the agreed facts of opinion, for the reasons stated, that this action cannot be maintained, judgment is to be entered for the defendant.